Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SPEISER, On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC BIOSCIENCES OF CALIFORNIA, INC., MICHAEL HUNKAPILLER, DAVID BOTSTEIN, WILLIAM ERICSON, CHRISTIAN HENRY, RANDY LIVINGSTAN, JOHN F. MILLIGAN, MARSHALL L. MOHR, KATHY ORDOÑEZ, and LUCY SHAPIRO,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff David Speiser ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of the public stockholders of Pacific Biosciences of California, Inc. ("Pacific Biosciences" or the "Company") against Pacific Biosciences and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Pacific Biosciences will be acquired by Illumina, Inc. ("Illumina") through its wholly owned subsidiary, FC Ops Corp. ("Merger Sub") (the "Proposed Transaction").

2.     On November 1, 2018, Pacific Biosciences and Illumina issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated November 1, 2018 (the "Merger Agreement") to sell Pacific Biosciences to Illumina.   Under the terms of the Merger Agreement, Pacific Biosciences stockholders will be entitled to receive $8.00 per share in cash (the "Merger Consideration").   The Proposed Transaction has a total enterprise value of approximately $1.2 billion on a fully diluted basis.

3.     On December 18, 2018, Pacific Biosciences filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that Pacific Biosciences stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); (ii) the background process leading to the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

20(a) of the Exchange Act as Pacific Biosciences stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4.      In short, unless remedied, Pacific Biosciences' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Pacific Biosciences is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Pacific Biosciences.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.      Defendant Pacific Biosciences is a Delaware corporation with its principal executive offices located at 1305 O'Brien Drive, Menlo Park, California 94025.  Pacific Biosciences' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "PACB."

10.     Defendant Michael Hunkapiller ("Hunkapiller") is Chairman of the Board and has been the Company's President and Chief Executive Officer ("CEO") since 2012 and a director of the Company since 2005.

11.     Defendant David Botstein ("Botstein") has been a director of the Company since 2012.

12.     Defendant William Ericson ("Ericson") has been a director of the Company since 2004 and the Board's Lead Independent Director since 2010.

13.     Defendant Christian Henry ("Henry") has been a director of the Company since July 31, 2018.  Defendant Henry previously served as a member of Illumina's executive team from 2005 through January 2017 where he served in a number of different roles including Chief Financial Officer, Chief Commercial Officer and General Manager of the Life Sciences Business.

14.     Defendant Randy Livingston ("Livingston") has been a director of the Company since 2009.

15.     Defendant John F. Milligan ("Milligan") has been a director of the Company since 2013.

16.     Defendant Marshall L. Mohr ("Mohr") has been a director of the Company since 2012.

17.     Defendant Kathy Ordoñez ("Ordoñez") has been a director of the Company since 2014 and previously served as the Company's Chief Commercial Officer and Executive Vice President from October 30, 2017 until October 30, 2018.

18.     Defendant Lucy Shapiro ("Shapiro") has been a director of the Company since 2012.

19.     Defendants Hunkapiller, Botstein, Ericson, Henry, Livingston, Milligan, Mohr, Ordoñez, and Shapiro are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Illumina is a Delaware corporation with its principal executive offices located at 5200 Illumina Way, San Diego, California 92122.  Illumina's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ILMN."

21.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Illumina.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Pacific Biosciences common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of December 7, 2018, there were approximately 149,621,715 shares of Pacific Biosciences common stock outstanding.  All members of the Class may be identified from records maintained by Pacific Biosciences or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

28.     Pacific Biosciences designs, develops, and manufactures sequencing systems to resolve genetically complex problems.  The Company's Single Molecule, Real-Time ("SMRT") sequencing technology enables single molecule, real-time detection of biological processes.  This SMRT technology enables the observation of DNA synthesis as it occurs in real time by harnessing the natural process of DNA replication, which is a highly efficient and accurate process actuated by the DNA polymerase.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.     The Company launched its first commercial product, the PacBio RS System, during the second quarter of 2011 and launched its higher performance PacBio RS II System during the second quarter of 2013.  In September of 2015, Pacific Biosciences announced the Sequel System, which is based on the same underlying SMRT technology as the PacBio RS II System, but can achieve up to approximately seven times the throughput with newly-designed SMRT Cells.

30.     Based on its SMRT technology, Pacific Biosciences' products enable: (i) de novo genome assembly to finish genomes in order to more fully identify, annotate, and decipher genomic structures; (ii) full-length transcript analysis to improve annotations in reference genomes, characterize alternatively spliced isoforms in important gene families, and find novel genes; (iii) targeted sequencing to more comprehensively characterize genetic variations; and (iv) real-time kinetic information for epigenome characterization.  The Company's PacBio sequencing systems, including consumables and software, provide a simple, fast, end-to-end workflow for SMRT Sequencing.

31.     Pacific Biosciences' customers include research institutions; commercial laboratories; genome centers; clinical, government, and academic institutions; genomics service providers; pharmaceutical companies; and agricultural companies.

32.     Pacific Biosciences' total revenue was $93.5 million for the year ended December 31, 2017, $90.7 million for 2016 and $92.8 million for 2015.  The Company's total assets were $144.1 million as of December 31, 2017 and $137.9 million as of December 31, 2016.

33.     Beginning in August 2017, the Company, with the assistance of a financial advisor, contacted 23 parties concerning their interest in a strategic partnership with Pacific Biosciences. These parties included Illumina and a strategic partner in the Chinese market, referred to in the Proxy Statement as "Party A."

34.     Beginning in September 2017, members of Company management held various discussions with Illumina management regarding a strategic partnership.  In mid-September 2018, Illumina's President and CEO Francis deSouza ("deSouza") indicated that Illumina might prefer to acquire the Company rather than enter into a strategic partnership.  On September 25, 2018, Illumina submitted a non-binding letter expressing its interest in acquiring the Company for $7.00 per share.

35.     On October 12, 2018, the Company entered into a non-binding term sheet with Party A regarding a possible commercial partnership with Party A and the associated investment by one or more Chinese investors (the "Partnership Transaction") with a goal of entering into the Partnership Transaction before November 10, 2018.

36.     On October 20, 2018, Illumina increased the value of its proposal to $8.00 per share.

37.     At a November 1, 2018 Board meeting, Centerview rendered its fairness opinion and the Board approved the Merger Agreement.  Later that day, the Company entered into the Merger Agreement with Illumina for $8.00 per share.

38.     Also on November 1, 2018, Pacific Biosciences and Illumina issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

SAN DIEGO & MENLO PARK, Calif.– Nov. 1, 2018– Illumina, Inc. (NASDAQ: ILMN) and Pacific Biosciences (NASDAQ:PACB) today announced they have signed an agreement for Illumina to acquire Pacific Biosciences at a price of $8.00 per Pacific Biosciences share in an all-cash transaction. This price represents a premium of 71% to Pacific Biosciences' 30 trading day volume weighted average share price as of the market close on October 31st, 2018, and a total enterprise value of approximately $1.2 billion on a fully diluted basis.

The agreement has been approved by the board of directors of Illumina and Pacific Biosciences. The acquisition complements Illumina sequencing solutions with accurate long-read sequencing capabilities to answer a set of complex genomic questions. While Illumina's accurate and economic short-read sequencing platforms address the majority of sequencing applications optimally, select applications, such as *de novo* sequencing and sequencing of highly homologous regions of genomes, are better addressed with accurate long-reads. With its acquisition of Pacific Biosciences, Illumina will be positioned to provide integrated workflows and novel

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

innovations that bring together the best of both technologies to help researchers advance their discoveries faster and clinicians offer new tests economically.

"PacBio's unmatched accuracy mirrors that of Illumina's in short-read sequencing. Combining the two technologies positions us to reach more applications, accelerate the pace of genomic discovery and bolster our innovation engine which has been a hallmark of Illumina since our inception," said Francis deSouza, President and Chief Executive Officer of Illumina. "PacBio's relentless pursuit to improve sequencing accuracy, while driving down the cost, underscores the potential of long-reads to expand sequencing to new customers and applications."

"Illumina continues to democratize the use of sequencing at an unprecedented rate. Through this combination, thousands of researchers will now have direct access to this technology," said Michael Hunkapiller, Ph.D., Chief Executive Officer of Pacific Biosciences. "Illumina and Pacific Biosciences have shared values and a commitment to innovation. Our complementary sequencing technology, once integrated, will offer customers a new standard of insight and understanding, opening new frontiers of genomic utility."

The transaction is subject to approval by the shareholders of Pacific Biosciences, as well as other customary closing conditions, including applicable regulatory approvals. Illumina expects to close the transaction in mid-2019.

**Insiders' Interests in the Proposed Transaction**

39.    Pacific Biosciences insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Pacific Biosciences.

40.    Pacific Biosciences' directors and executive officers stand to reap substantial financial benefits for securing the deal with Illumina.   The following table summarizes the payments the Company's directors and executive officers stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Number of Shares Held (#)(1) | Value of Shares Held ($)(1) | Number of Shares Subject to In-the-Money Options (#)(2) | Value of In-the-Money Company Options ($)(2) | Number of Shares Subject to Company RSUs and Company PRSUs (#)(3) | Value of Shares Subject to Company RSUs and Company PRSUs ($)(3) | Total ($) |
|---|---|---|---|---|---|---|---|
| Michael Hunkapiller, Ph.D. | 2,300,000 | 18,400,000 | 2,855,000 | 9,198,150 | 150,000 | 1,200,000 | 28,798,150 |
| Susan K. Barnes | 347,417 | 2,779,336 | 1,436,262 | 3,394,781 | 131,250 | 1,050,000 | 7,224,117 |
| Kevin Corcoran(4) | 163,115 | 1,304,920 | 602,496 | 1,783,015 | — | — | 3,087,935 |
| Michael Phillips | 200,156 | 1,601,248 | 597,500 | 1,791,750 | 44,835 | 358,680 | 3,751,678 |
| David Botstein, Ph.D | — | — | 160,000 | 732,450 | — | — | 732,450 |
| William Ericson | — | — | 150,000 | 674,250 | — | — | 674,250 |
| Randy Livingston | — | — | 190,000 | 768,650 | — | — | 768,650 |
| Christian Henry | — | — | 35,000 | 151,900 | — | — | 151,900 |
| Marshall Mohr | — | — | 185,000 | 846,700 | — | — | 846,700 |
| John Milligan, Ph.D. | — | — | 135,000 | 570,050 | — | — | 570,050 |
| Kathy Ordoñez(5) | — | — | 547,500 | 2,578,075 | 131,250 | 1,050,000 | 3,628,075 |
| Lucy Shapiro, Ph.D | 101,666 | 813,328 | 58,334 | 257,918 | — | — | 1,071,246 |

41.     Further, if they are terminated in connection with the Proposed Transaction, Pacific Biosciences' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total Payments ($) |
|---|---|---|---|---|
| Michael Hunkapiller, Ph.D. | $1,030,001 | $2,370,376 | — | $3,400,377(4) |
| Susan K. Barnes | $ 617,501 | $1,889,405 | $ 57 | $2,506,963(4) |
| Kathy Ordoñez | — | $2,866,165 | — | $2,866,165 |
| Kevin Corcoran(5) | — | — | — | — |
| Michael Phillips | $ 168,400 | $ 829,603 | $ 9,508 | $1,007,511(4) |

## The Proxy Statement Contains Material Misstatements and Omissions

42.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Pacific Biosciences' stockholders.   The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

43.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview; (ii) the background process leading to the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.   Accordingly, Pacific Biosciences stockholders are being asked to make a voting or

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Centerview's Financial Analyses***

44.     The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pacific Biosciences' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Pacific Biosciences' stockholders.

45.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items Centerview used to calculate unlevered free cash flow; (ii) quantification of the inputs and assumptions underlying the selection of the discount rates ranging from 11% to 13%; (iii) the range of implied terminal values of Pacific Biosciences at the end of the Forecast period; (iv) Centerview's basis for using a range of terminal EBITDA multiples of 12.0x to 16.0x to calculate the range of terminal values; (v) the implied perpetuity growth rates resulting from the analysis; and (vi) the number of fully-diluted outstanding shares of common stock as of October 30, 2018.

46.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by Centerview in the analysis; and (ii) any benchmarking analyses for Pacific Biosciences in relation to the selected companies analyzed by Centerview.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

47.     With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Centerview in the analysis.

48.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

49.     The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

50.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

51.     In connection with the sale process, the Proxy Statement sets forth that "[b]eginning in August 2017 and continuing into 2018, Pacific Biosciences, with the assistance of an internationally recognized investment banking firm, contacted 23 parties (including Illumina and Roche) concerning their interest in a strategic partnership with Pacific Biosciences."   Proxy Statement at 35.  The Proxy Statement further discloses that

> By September 2018, Pacific Biosciences had identified a preferred strategic partner for the Chinese market (which we refer to as "Party A") and was actively discussing a commercial partnership with Party A. Party A was one of the 23 companies previously contacted concerning a strategic partnership. In addition, Pacific Biosciences was in discussions regarding an investment into Pacific Biosciences by one or more Chinese investors, with this investment to occur at approximately the same time as Pacific Biosciences entered into a commercial partnership with Party A.

*Id.* at 36.  The Proxy Statement fails, however, to expressly indicate whether the Company entered into confidentiality agreements with any of the parties contacted beginning in August 2017 in connection with a potential strategic partnership, not including Illumina, and if so, whether these

confidentiality agreements are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

52.     The disclosure of the existence and terms of any confidentiality agreements Pacific Biosciences entered into with any other party is crucial to Pacific Biosciences stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

53.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest of Company Insiders***

54.     The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

55.     For example, during a November 1, 2018 investor and media conference call following the announcement of the Proposed Transaction, defendant Hunkapiller stated:

> I'm very pleased with the announcement of our planned combination with Illumina **and to be sharing with our employees, customers and investors that we will be joining the Illumina family**. I'm extremely proud of the work that the PacBio team has accomplished as a standalone company, and I believe that as part of Illumina, we can continue to innovate our SMRT Sequencing capabilities and reach more customers and address more applications substantially faster than we could do as a standalone enterprise.
>
> As Francis has mentioned, not only do the 2 companies share a commitment to accuracy, supporting scientific and clinical markets with quality products and to customer-focused innovation, but **we also share a similar culture that we think will enable us to integrate quickly** and continue to deliver on our technology roadmap that substantially broadens the addressable opportunity for our complimentary long-read platform. **We look forward to serving our customers as part of Illumina in the future.**

Emphasis added.

56.     The Proxy Statement, however, fails to disclose whether any of Pacific Biosciences' executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Illumina and Pacific Biosciences' executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Illumina's prior proposals or indications of interest mentioned management retention in the combined company or the purchase of or participation in the equity of the surviving corporation.

57.     The omission of this information renders the statements in the "Background of the Merger," and "Interests of Pacific Biosciences' Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

58.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

59.     Plaintiff repeats all previous allegations as if set forth in full.

60.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

- 14 -

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  The Proxy Statement misrepresented and/or omitted material facts, including material information about (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; (ii) the background process leading to the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

63.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

64.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

65.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     The Individual Defendants acted as controlling persons of Pacific Biosciences within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers or directors of Pacific Biosciences and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of this document.

- 16 -

70.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Pacific Biosciences, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Pacific Biosciences stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

Plaintiff demands a trial by jury on all claims and issues so triable.

2

Dated: January 4, 2019

3

**WEISSLAW LLP**
Joel E. Elkins

4

By: */s/ Joel E. Elkins*

5

Joel E. Elkins

6

9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210

7

Telephone:  310/208-2800
Facsimile:   310/209-2348

8

**OF COUNSEL:**

-and-

9

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato

Richard A. Acocelli
1500 Broadway, 16th Floor

10

885 Third Avenue, Suite 3040
New York, New York 10022

New York, NY  10036
Telephone: 212/682-3025

11

Tel: (212) 308-5858
Fax: (212) 486-0462

Facsimile:  212/682-3010

12

Email: fortunato@bespc.com

*Attorneys for Plaintiff*

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS